## J. W. HUNT v. KELLUM & ROTAN.

(Case No. 4904.)

1. ATTACHMENT — SALE.— Goods attached on the ground that the defendant had disposed of his property with intent to defraud his creditors; had been sold by him before attachment to a third party with no understanding as to when the consideration should be paid; they were received by the agent of the purchaser, who paid in part for them and shipped a portion of them to his principal; the agent afterwards agreed to permit a third party to retain as trustee the remaining portion of the goods until the purchaser paid for them as "per agreement." There was no effort before the attachment to rescind the sale by tendering back the consideration paid. The question being whether there had been, as to attaching creditors, a sale, held,

(1) There being no understanding as to when the consideration was to be paid, the presumption of law is that it was an unconditional sale, taking effect immediately, and dependent for its completion on nothing to be afterwards done.

(2) A sale of personal property is completed by a payment of the purchase money, or when the purchaser takes the thing sold into possession.

(3) The effect of the detention of the goods not shipped by a trustee was to make the transaction, to that extent, a pledge of the goods detained to secure the debt created by their sale. The sale of the goods remained as complete as if the unpaid purchase money had been secured by a pledge of other property.

(4) Had the transaction been a conditional sale, the condition, under the circumstances, was waived by a failure in time to elect whether he would confirm the sale and sue for the balance due, or rescind it, by tendering back the amount paid, and reclaim the goods, while the situation of the parties remained such as to permit this.

(5) The sale being of the entire stock of merchandise owned by the defendant, who ceased thereafter to transact a mercantile business, no damages could be recovered on account of injury to his reputation as a merchant by the levy of the attachment.

APPEAL from Bosque. Tried below before the Hon. Jo Abbott. Appellees brought suit for a debt alleged to be due, for $388.25,

and sued out an attachment, alleging as ground for attachment that appellants "had disposed of their property in part with intent to defraud their creditors."

Appellants pleaded a general denial, and in reconvention:

1st. That there was no probable cause; that appellees' affidavit for attachment was false, and that the writ was levied on appellants' goods of the value of $3,000, which was excessive.

2d. That appellees sued out the attachment maliciously, without cause, with intent to injure appellants.

3d. That appellants were of good commercial credit, and that such credit had been ruined by plaintiffs suing out the attachment, and prayed for damages.

Verdict for amount of plaintiffs' claim, and judgment foreclosing lien.

In appellants' first plea in reconvention, they set out specifically that they had been for a long time merchants and had good credit, and as their customers had been, by reason of failures of crops, unable to pay them for goods sold in 1881, they deemed it best for their creditors to sell out and not incur further debts; and as they owed one F. M. Middlebrook about $800, they bargained their stock of goods to him, and agreed to take their note for the above amount, which Middlebrook held, in part payment, and the remainder Middlebrook was to pay in good notes for land, secured by vendor's lien and by him indorsed; that the sale was openly and fairly made, and appellees, Kellum & Rotan, were informed of it by appellants so soon as it occurred, and before they sued out their attachment; that the goods had been placed, by mutual agreement of appellants and Middlebrook, in possession of J. N. Porter, to be held by him until Middlebrook delivered the notes, and they were ascertained to be good and fully secured by the liens; that this occurred about the 10th of May, 1882, and that on the 20th of May, 1882, appellees caused them to be attached before the notes had been presented to J. N. Porter.

The character of the testimony, as also of the instructions, which were quite lengthy, may be fairly inferred from the opinion itself.

*Anderson & Flint*, for appellants, on the issue as to whether a sale was made, cited Morgan v. Taylor, 32 Tex., 365; Furlow v. Gillian, 19 Tex., 250; Word v. Shaw, 7 Wend., 627; 1 Parsons on Contracts, 526, 527; Benjamin on Sales, p. 274, sec. 320.

No briefs on file for appellee.

WILLIE, CHIEF JUSTICE.— The charges of the court complained of in the first and second assignments of error submitted to the jury the sale made by appellants to Middlebrook under two aspects: First, as an unconditional sale where a part of the consideration had been paid by the purchaser; and secondly, as an executory contract where a condition precedent had been partly fulfilled by the party bound to its performance.

In the first case the court held that the title to the goods sold passed to the purchaser immediately; in the second, that the vendor was deprived of his title by failing to rescind the contract and place the vendee in the same condition as before the sale within a reasonable time, and before it had been placed beyond his power to comply with his part of the contract.

These are undoubtedly correct principles of law, and they do not seem to be disputed. The complaint is that the facts of the case did not justify them. There was much conflict of testimony as to the facts surrounding the sale made by appellants to Middlebrook. In such cases, if there be sufficient testimony to warrant the charge of the court, we cannot reverse if the charge announces correct rules of law. The court, in this case, adapted its charge to every phase of the evidence, and, in effect, instructed the jury as to what they should do if they believed the state of case to exist as made by the proof of appellants, and what they should find if they gave credit to the evidence of the appellees. It is apparent that they believed the witnesses of the latter, and it is in its application to the state of facts made by them that we must consider the charge of the court.

It plainly appears from this evidence that at the time of making the sale of the goods by Hunt & Co. to Middlebrook there was no understanding as to when the consideration was to be paid. The presumption of law, then, is that it was an unconditional sale, taking effect immediately, and dependent for its completion on no condition whatever. Benjamin on Sales, §§ 311, 315.

Again, the trade for the goods was made by Hunt and Middlebrook in person and acting for themselves. Ford was afterwards sent by Middlebrook to receive the goods for him and to see to their invoicing and delivery, and, it seems, to make a payment on the consideration money. He did receive the goods, and paid a large portion of the consideration, and had shipped a large quantity of the goods to his principal before anything was said about securing the unpaid balance.

It is a principle, perhaps, as old as the common law itself, that

when there is no understanding to the contrary, a sale of personal property is completed by a payment of all, or a portion, of the purchase money, or when the purchaser, by agreement, takes the thing sold into possession. Shep. Touch., p. 224. In this case Ford, as agent of Middlebrook, without any previous understanding to the contrary, not only received possession of the goods, but paid a large part of the consideration agreed to be given for them.

After the completion of the sale in manner as stated, Hunt became uneasy about the balance of the consideration, and it was agreed between him and Ford that enough of the goods to meet the balance thus unpaid should be turned over to Porter as trustee, to be delivered to Middlebrook when he paid for them as per agreement. The object of this, as appears from Ford's testimony, was to secure the payment of the balance due from Middlebrook on the trade. The effect was to make the transaction a pledge of the goods to secure a debt due from Middlebrook to Hunt. This was the object which Hunt sought to obtain. The goods were in possession of Middlebrook through his agent, and were not returned to Hunt, but were sent to the same storehouse where they were originally directed to be sent for Middlebrook's benefit. They were, in effect, placed there by himself, not for redelivery to Hunt, but to be held by a trustee until Middlebrook should redeem them by paying the amount due for their purchase. The original right to the goods, obtained by reason of the sale, delivery and part payment of consideration, still existed in Middlebrook. His right to possession of them as against the trustee was alone suspended. The trade was as complete as if the unpaid balance of the consideration had been secured by a pledge or hypothecation of other property. It was no more than a sale upon a credit as to this balance of the goods, and, if they had remained in the hands of Hunt himself, he would have had only a lien on them for their price. 1 Parsons on Con., p. 526, and authorities cited; Martindale v. Smith, 1 Q. B., 395.

We think the charge complained of in the first assignment of error was warranted by the evidence. But considered as a conditional sale, we think that under the circumstances of this case the condition was waived, and the property in the goods, as between Hunt and Middlebrook, passed to the latter.

A part of the purchase money was paid; possession of the property was delivered to a third party, to be delivered to Middlebrook upon performance of certain acts by him. Hunt had the power to do one of two things,— confirm the trade and sue for the balance due, or rescind it and reclaim the goods. If he proposed to do the latter,

he must restore what he had received, and replace all parties in their original situation. Moreover, he must do this within a reasonable time, and whilst the situation of the parties remained so far unchanged that they could be restored to their first position. Webb v. Stone, 24 N. H., 282, 288.

To place the parties in their original condition here, that part of the consideration received by Hunt should at least have been offered to Middlebrook, and the goods should have been in such condition that they could have been returned to Hunt. But the levy of the attachment prevented the latter, and no offer to return the note received in part payment was ever made, but the note was canceled and destroyed by Hunt. He, by his own act, incapacitated himself from restoring the note, and made no offer to supply its place with anything else.

We think the charge of the court complained of in the second assignment of error is also correct.

The third assignment of error is not well taken. The financial condition of the purchaser does not change the rule of law. The vendor is as much bound to restore to an insolvent the purchase money received from him, and otherwise place him in the same condition he was in before the trade, as he would one in solvent circumstances.

As to the fifth error assigned, it is sufficient to say that it is difficult to see how Hunt could recover for damages caused by the seizure of the goods if they belonged to Middlebrook; and as for the damages to the reputation of appellants as merchants, the proof shows that the goods sold to Middlebrook constituted all their stock, and after the sale they ceased to be merchants, and had no reputation as such to be injured by the attachment of the property.

The other assignments of error are too general to claim our attention; but, if we could consider them, they disclose no errors for which the judgment should be reversed. There is no error in the judgment and it is affirmed.

AFFIRMED.

[Opinion delivered June 5, 1883.