WILLIAM T. B. ROBERTS, DEFENDANT IN ERROR, v. BENJAMIN F. JAMES, PLAINTIFF IN ERROR.

Submitted March Term, 1912—Decided November 18, 1912.

1. The rule requiring one who seeks to rescind a contract on the ground of fraud to restore his adversary to the position he was in at the time of the contract, is applicable only to a contract that has been partly executed, and not to a contract that still remains wholly executory on the part of the alleged fraud-doer. All the party rescinding can do is to deny his obligation under the contract, and if he does so in a reasonable time he has rescinded.

2. What is a reasonable time within which to rescind a contract depends on the circumstances of each particular case. Unless the situation of the other party has changed to his detriment, the party rescinding may keep the question open as long as he does nothing to affirm the contract, and may even wait until action is brought against him.

3. Delay in rescinding a contract is evidence of an election to treat the sale as valid, of more or less weight, according to the circumstances of the case, but of itself does not operate as an estoppel unless in the meantime superior rights of third persons have intervened.

4. Where there is a written contract for the sale of land wholly executory on the part of the vendor, and the vendee has the right to rescind by denying his obligation under the contract and defending a suit thereon, the vendor is sufficiently protected against future claim under the contract by the record of the suit. Upon the judgment the contract will be either established as valid or annulled as void, and the question of liability thereon will become *res adjudicata.*

5. An agent of a vendor sold vacant lots upon the representation that they intended to build a railway station and cement walks. *Held,* that if the representation was false the vendee might avoid a contract induced thereby.

On error to the Gloucester Circuit Court.

Action by vendor against purchaser to recover purchase price of lots. The written agreement of sale requires the payment of the purchase price in monthly installments, and provides that upon default in payment, the vendor may treat the whole purchase-money remaining unpaid as immediately due and payable. The deed is to be delivered upon the payment of the whole purchase-money, and the purchaser, it is provided, shall have no right of possession until the deed is delivered. No installment of purchase-money has been paid; the defendant (the purchaser) has never had possession. He defended upon the ground that the contract was induced by fraudulent representations of the plaintiff's agent, Sands, by whom alone the contract on the part of the plaintiff was made. The lots were in a great field, and there was evidence that Sands represented that there was going to be a hotel near by at a spot pointed out by him, and that there was to be a railway station, cement walks, a park with swings; that Roberts was back of the enterprise, that he was going to build one hundred houses; that twenty-five were then contracted for; that when there were fifty, they would get a railway station. The houses have not been built; there seems to be no railway station; the hotel was partly built, but sold by the sheriff, torn down, and the lumber sold at auction. There was no proof of rescission of the contract by the defendant, other than the fact that he defended this suit on the ground of fraud. A

verdict was directed in favor of the plaintiff for the balance due upon the ground as stated by the trial judge that there was no proof to go to the jury of a legal rescission, and that the alleged representations were mere promises.

For the defendant in error, *Joseph J. Summerill.*

For the plaintiff in error, *John Boyd Avis* and *David O. Watkins.*

The opinion of the court was delivered by

SWAYZE, J.    It is settled that where a party seeks to be relieved from a contract upon the ground that it was induced by fraud, he must, except so far as he has some legal excuse for failure, restore his adversary to the position he was in at the time of the contract, and that there can be no rescission as long as he retains anything received under the contract, which he might have returned, and the withholding of which might be injurious to the other party. This statement of the rule is taken from the opinion of the Supreme Court in *Byard* v. *Holmes,* 4 *Vroom* 119, 127. It has been approved by this court. *Crosby* v. *Wells,* 44 *Id.* 790, 801. The reason upon which it rests is the injustice of permitting a man to retain a benefit under a contract which he on his part repudiates. By its terms, the rule requires only the return of what has been received. It is applicable only to a contract that has been partly executed, and not to a contract that still remains wholly executory on the part of the alleged fraud-doer. In such a case the party who undertakes to rescind has received no advantage; he has nothing to return, and all he can do is to deny his obligation under the contract. If he does so in a reasonable time he has rescinded the contract. Even where he has in fact received something under the contract, he is not always bound to return it. The rule, "like other rules of justice must be so applied in the practical administration of justice as shall best subserve, in each particular case, the undoing of wrong, and the vindication of the right." *Pidcock* v. *Swift,* 6 *Dick.*

*Ch. Rep.* 405, 408; *Guild, Executor,* v. *Parker, Receiver,* 14 *Vroom* 430; *Doughten* v. *Camden Building Loan Association,* 14 *Stew. Eq.* 556.

It is also settled that one who desires to rescind a contract, must act within a reasonable time. *Dennis* v. *Jones,* 17 *Stew. Eq.* 513; *Clampitt* v. *Doyle,* 3 *Buch.* 678. What is a reasonable time necessarily depends on the circumstances of each particular case. It is settled in the English courts that unless the situation of the other party has changed to his detriment, the contract continues until the party defrauded elects to avoid it, and he may keep the question open as long as he does nothing to affirm the contract. *Clough* v. *London and Northwestern Railway* (1871), *L. R., 7 Ex.* 26; 41 *L. J. Exch.* 17; *Morrison* v. *Universal Marine Insurance Co.* (1873), *L. R., 8 Ex.* 197; 42 *L. J. Exch.* 115; *United Shoe Machinery Co. of Canada* v. *Brunet* (1909), *A. C.* 330. He may even wait until action is brought against him (*Clough* v. *London and Northwestern Railway, ubi supra*), and a plea setting up the fraud amounts to a rescission of the contract. *Lawton* v. *Elmore,* 27 *L. J. Ex.* 141; *Dawes* v. *Harness, L. R.,* 10 *C. P.* 166; 44 *L. J. C. P.* 194; *Aaron's Reefs* v. *Twiss* (1896), *A. C.* 273; 65 *L. J. P. C.* 54. The case last cited was an action by a company against a shareholder for calls upon his stock. In such cases the right of creditors and other stockholders to have the stock paid for requires a prompt disaffirmance of the subscription to stock; but inasmuch as in the case before the court, the rights of creditors and other stockholders were not involved, it was held enough to set up the fraud by way of defence when action was brought. Lord Watson put the case very neatly. He said: "The respondent is not seeking to rescind the contract, he is merely resisting its enforcement by the party guilty of the fraud." We have approved the same principle in a case where the vendor of chattels sought to rescind and reclaim his property because of the fraud of the vendee. *Williamson* v. *New Jersey Southern Railroad Co.,* 2 *Stew. Eq.* 311, 319. We there said: "The vendor may rescind the contract of sale and reclaim the property until,

with a knowledge of the fraud, he elects to ratify and confirm the sale, or third persons, acting on the apparent ownership of the property by the fraudulent vendee, acquire rights therein *bona fide* and for a valuable consideration. Delay in exercising the power of rescission is evidence of an election to treat the sale as valid, of more or less weight, according to the circumstances of the case, but of itself does not operate as an estoppel, unless in the meantime superior rights of third persons have intervened." In a case like that then before us, rescission strictly so called is required, since the contract has been executed by a delivery of the property.

In the case of an executory contract, a refusal to perform any obligation thereunder and the defence of an action brought thereon are all that the defrauded party can do by way of asserting his right to disaffirm the contract, and unless his silence or delay has operated to the prejudice of the other party, he may first assert his right when his adversary first asserts his claim by action. The failure of the vendee to disaffirm the contract might sometimes prevent the vendor from selling to another and a different question would arise from that now before us. Here there is no proof that the plaintiff, the vendor, was in any way prejudiced, except by his failure to receive the purchase-money, and to that he was not entitled if the contract was induced by fraud. The defendant repudiated his obligation at the very start by failing to pay any installment of the price, and if the plaintiff did not know the position taken by the defendant he could easily have ascertained it. The existence of the written contract, however, is an important circumstance, since the plaintiff is entitled to be rid of his obligation thereunder if he cannot enforce that of the defendant. Whether the contract is recorded does not appear, but whether recorded or not, it may possibly affect the plaintiff's title. A recent illustration of the difficulty that may arise is afforded by the case of *Cornwall* v. *Henson* (1900), 2 *Ch.* 298. We think, however, that the record of this suit, in which the defendant disaffirms the contract, is sufficient to protect the plaintiff against future claim. Upon the judg-

ment herein, the contract will be either established as valid or annulled as void, and the question of liability thereon will become *res adjudicata*. It is upon this basis that the vendee is allowed to rescind at law by setting up fraud as a defence to an action for the purchase price without being compelled to go into equity—a right so well recognized. that it is hardly necessary to cite authority. Cases are collected in 39 *Cyc.* 1417 and 1916, *note* 59. We think, therefore, that the defendant was entitled to defend on the ground that the contract was induced by fraud.

We are unable to agree with the learned trial judge that there was no evidence of fraud to go to the jury, because the false representations relied on by the defendant were mere promises. The representations that there were twenty-five houses contracted and that the plaintiff was back of the enterprise, were representations that such were the existing facts. The representation as to the intention to build a railway station and cement walks stands on a somewhat different footing. It is, however, settled that a representation of an intention as existing may if false avoid a contract induced thereby. Where directors of a company procured a loan by representing that its object was to buy property and develop the business, when in fact the object was to pay off pressing liabilities, they were held in an action for deceit: "There must be," said Lord Bowen, "a misstatement of an existing fact, but the state of a man's mind is as much a fact as the state of his digestion. It may be difficult to prove the state of a man's mind at a particular time, but if it can be ascertained, it is as much a fact as anything else. A misrepresentation as to the state of a man's mind is therefore a misstatement of fact." *Edgington* v. *Fitzmaurice, L. R., 29 C. D.* 483; 55 *L. J. Ch.* 650. The most familiar illustration perhaps is the fraudulent purchase of goods by one who does not intend to pay for them, a case in which there is usually no express representation of intention, but merely the representation of an intent to pay implied from the fact of purchase. *Leake Cont.* 294, 295. The New

York Court of Appeals has recently held that a statement by the grantee that he intends to erect a dwelling-house on that tract conveyed while in fact he intends to erect a garage, is a statement of a material existing fact justifying the setting aside of the deed. *Adams* v. *Gillig*, 199 *N. Y.* 314. The note in 20 *Ann. Cas.* 914, refers to *Chicago, &c., Railroad Co.* v. *Titterington*, 84 *Tex.* 218, where the alleged fraud was a promise to erect a depot on the land. Where a vendor induced a sale by representation of his intention to make a new street, and did not make the improvement or prove what had prevented it, specific performance was refused. *Beaumont* v. *Dukes, Jacob* 422. In *Myers* 'v. *Watson*, 1 *Sim.* (*N. S.*) 523, the purchasers were induced to enter into the contract by representations made to them by the vendor's agent that the vendor intended to lay out the whole estate in streets, to build houses upon it and to erect a church; none of those acts had been done. Specific performance was refused. It must be admitted that cases of specific performance stand on a basis peculiar to themselves, since the decree is not a matter of strict right. A distinction is necessary also between cases where the representation of an intention is in fact a mere promise collateral to the contract and where it amounts to an affirmation of a present state of mind. In this case the man who made the representation undertook to state the intent of other persons and did not assume to make it a term of the contract; we think a jury might find that he stated it as an existing fact.

There was evidence that the representations were in fact made. There was also evidence from which the jury might infer that the representations or some of them were false. Whether in fact twenty-five houses were under contract and whether there was a then present intention to build a station and cement walks were matters within the knowledge of the plaintiff. His failure to prove that such contracts ever existed coupled with the fact that no houses have ever been built justifies an inference adverse to the plaintiff both as to his representation of an existing fact and as to his intention

to develop the property. That the representation was a material one inducing the contract by the purchaser is obvious. That in such a case the party defrauded by the misrepresentation of an agent may rescind the contract, or defend an action brought thereon is settled in this court. *Reitman* v. *Fiorillo,* 47 *Vroom* 815.

We do not think it necessary to consider whether the special pleas properly raise the defence or not. As we understand from the colloquy between court and counsel when the verdict was directed the case was decided upon the broad ground that there was no defence regardless of any question of pleading. It was error to direct a verdict for the plaintiff and the judgment must be reversed, and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, BERGEN, VOORHEES, MINTURN, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE, TREACY, JJ. 13.