## BROWN ET AL. v. YOUNG.

[No. 8,899. Filed December 9, 1915. Rehearing denied April 20, 1916. Transfer denied June 7, 1916.]

1. CANCELLATION OF INSTRUMENTS.—*Complaint.*—*Damages.*—*Allegation of.*—In an action to set aside a contract for the sale of real estate and deeds made pursuant thereto as fraudulent and void, the complaint is not fatally defective for failure to allege specifically the value of the real estate conveyed and the consequent damages, where there is an averment that nothing of value was received by the plaintiff as a consideration for executing the deeds to the realty involved, and it is clearly shown by the allegations that all the parties treated the realty as of value, the reasonable inference to be drawn from such averments being that damage resulted. p. 372.

2. CANCELLATION OF INSTRUMENTS.—*Complaint.*—*Statu Quo.*—In an action to set aside deeds as fraudulent, the complaint is not fatally defective for failure to allege therein that the defendants had been placed in *statu quo* where there are averments showing that the plaintiff received nothing of value as a consideration for the execution of the deeds involved in the action. p. 373.

3. CONTRACTS.—*Right to Rescind.*—*Waiver by Delay.*—The length of time a party to a contract permits to elapse does not necessarily

Brown *v.* Young—62 Ind. App. 364.

determine the right to rescind, the governing consideration being whether the delay has been long enough, under the circumstances of the particular case, to result in prejudice to the other party. p. 374.

4.   CONTRACTS.—*Rescission.*—*Notice.*—A formal written notice is not necessary to rescind a contract, it being sufficient that there is some positive act on the part of the party who rescinds that shows such an intention.   p. 374.

5.   CANCELLATION OF INSTRUMENTS.—*Complaint.*—*Sufficiency.*— *Disaffirmance of Contract.*—In an action to set aside a contract for the sale of real estate and deeds made to defendants pursuant thereto as fraudulent, the complaint is sufficient as against a demurrer raising the question as to whether the contract was disaffirmed within a reasonable time where it avers that the plaintiff "has long prior to this date disaffirmed the said deed" to the defendant, and "also the written contract * * * and given proper and due notice of such disaffirmance and demanded reconveyance thereof to herself," since the court is bound to resolve all reasonable inferences in support of the complaint.   p. 374.

6.   APPEAL.—*Ruling on Demurrer.*—*When Grounds for Reversal.*— Under the provisions of §350 Burns 1914, §345 R. S. 1881, no objection taken by demurrer and overruled, is sufficient to reverse the judgment, if it appears from the whole record that the merits of the cause have been fairly determined.   p. 375.

7.   TRIAL.—*Conclusions of Law.*—*Complaint.*—*Issues.*—Where a complaint has been treated by the trial court and the attorneys as an action not only to rescind a contract of sale of property and to cancel deeds executed in accordance therewith but also as one to quiet title, though imperfect when viewed as such, a conclusion of law by the court quieting title in the plaintiff to the property involved in the action is not objectionable as being without the issues.   p. 375.

8.   TRIAL.—*Conclusion of Law.*—*Findings of Fact.*—*Held,* that under the findings of fact, appellants are not entitled to a conclusion of law showing lack of diligence on the part of the appellee in seasonably disaffirming the contract and agreement.   p. 377.

From Porter Superior Court; *Harry B. Tuthill,* Judge.

Action by Josephine E. Young against Harvey H. Brown and others. From a judgment for plaintiff, the defendants appeal.   *Affirmed.*

*Frank B. Pattee* and *Erwin McDowell,* for appellants.

*Peter Crumpacker* and *Fred Crumpacker,* for appellee.

SHEA, J.—This was an action upon a complaint filed by appellee against appellants. The cause was tried upon the second paragraph of complaint. In the language of appellants' counsel in his brief, this was an action to set aside a contract for sale of certain real estate, to set aside certain deeds of appellee to appellants as fraudulent and void, and to quiet the title to the real estate embraced in said contract and deeds in, appellee as against appellants. Separate demurrers were filed by Harvey H. Brown and Leila A. Brown on the ground that the second paragraph of complaint did not state facts sufficient to constitute a cause of action against either of appellants. The demurrers were overruled and exceptions properly saved. Answers in general denial were filed by the Browns. Appellant Jouvenat was defaulted. The cause was first tried in the Lake Superior Court, where the finding and judgment was against appellants. They then availed themselves of the provisions of the statute entitling them to a new trial as of right, and the cause was taken on a change of venue to the Porter Superior Court where a trial again resulted in a judgment against appellants, from which this appeal is taken.

The complaint alleges, in substance, that on September 1, 1904, appellee Josephine E. Young was the owner of certain real estate in Norcott's addition to Indiana City, Indiana; that on said date she entered into an agreement with appellant Harvey H. Brown, in which she agreed to convey to him or to his order on date of said contract, blocks, 14, 20 and 21, and block 13 except lot 3 therein, described in the complaint, by warranty deed, subject to a pro rata share of a mortgage incumbrance of $2,000, together with interest at six per cent. for two years, which pro rata share of said

incumbrance said Brown assumed and agreed to pay. It was further agreed that appellee would convey by warranty deed all the balance of the described real estate to Charles Jouvenat as a trustee to carry out certain provisions in said contract, which trust deed said Jouvenat was to hold as an escrow. It is charged that the contract further provided that Brown should turn over to Jouvenat as such trustee, and as an escrow, $7,000 par value of the stock of the Ozark Live Stock Company, an Illinois corporation theretofore formed according to law; that said trustee was to hold the real estate and stock until September 1, 1905, for the purpose of enabling Brown to pay the sum of $7,000 in cash to appellee, and in the event Brown did pay the sum to appellee within said time, the trustee was then and in that event to turn over and deed to said Brown all the real estate and also to return to him the capital stock of the Ozark Live Stock Company, subject to the incumbrance aforesaid; that in case Brown should fail to pay appellee the sum of $7,000 then the real estate was to be conveyed to her, and said trustee was also to deliver to her said capital stock. Brown was also entitled by the terms of the agreement to a deed to any lot or block in said real estate on or before September 1, 1905, on the payment of $25 per lot in cash, except lots fronting on Lake Michigan, for which he was to pay the sum of $35 per lot in cash. Said contract was duly recorded on November 19, 1904. A copy of the agreement is filed with and made a part of the complaint. Said Jouvenat accepted said trust, qualified as trustee, and held the deed, the contract and the stock in escrow; that appellee is an unmarried woman, the daughter of Joseph E. Young, wholly unaccustomed to business transactions, and that

she never had any business dealings of any conse-
quence; that her father, who was an old man, ap-
proximately eighty years of age, and feeble, acted
for her in making said agreement; that appellee did,
on said date, convey to said Brown blocks 13 and 14
except lot 3, and at the request of Harvey H.
Brown conveyed to appellant Leila A. Brown
blocks 20 and 21 by warranty deeds, which were
duly recorded; that said deeds were made subject
to the incumbrance on all of said property, which
the grantee therein assumed and agreed to pay pro
rata; that prior to and leading up to the execution
of said agreement and deeds, appellant, Harvey
H. Brown, falsely and fraudulently and with intent
to cheat and defraud appellee, represented to her
and her father as her agent, that said Ozark Live
Stock Company was solvent and owned over 1,300
acres of valuable land in Crawford County, Mis-
souri. The particular description of the land is
then set out. He further represented that said
land was valuable land, and worth $100 per acre;
that the Ozark Live Stock Company was in the
possession of said real estate, was the owner in fee
simple thereof, and that its title was unclouded ex-
cept for an incumbrance of $1,000 secured by a
mortgage thereon. It was further represented by
Brown to appellee and her father that the Ozark
Live Stock Company held in its own right and free
of all incumbrance 5,000 head of good healthy
sheep on said premises, and also held and owned in
its own right more than twenty head of cattle, and
more than ten horses on said real estate; that out-
side of said $1,000 mortgage the Ozark Live Stock
Company was not indebted to any one on any ac-
count; that it was capitalized for $150,000; that
it had a right to and did hold said property in its
corporate capacity and its capital stock was worth

par value; that said stock put up in escrow with said Jouvenat as trustee was then and there of the value of $7,000; that appellants gave no consideration, whatever, except as stated above, for the execution of said contract or deeds, or for the conveyance of the lands as heretofore set out; that appellant, Leila A. Brown, gave no consideration whatever for the real estate deeded to her. Appellee said that she relied upon the representations of said Brown and each and all of them; that she knew nothing about the facts, neither did her agent know about the facts except what was represented, as alleged, by said Brown; that neither appellee nor her agent had ever visited said lands in Crawford County, Missouri; had never been in that vicinity, and knew nothing of the character of said lands, the title thereof, nor facts concerning said sheep, cattle or horses, and had no opportunity of knowing said facts; that by reason of the aforesaid representations of said Brown she was induced to enter into the agreement, and was induced to execute the deeds to Jouvenat and to Harvey H. and Leila A. Brown; that, but for the statements and representations of said Harvey H. Brown and her reliance thereon and her want of knowledge of the facts, she would not have entered into said agreement, nor have executed said deeds or contract; that each and all of said statements and representations made by said Brown at the time they were made, were false, fraudulent and untrue, and were made for the purpose of deceiving, cheating and defrauding appellee and for the purpose of fraudulently procuring the execution of the contract and deeds. It is further alleged that said Brown and the Ozark Live Stock Company were wholly insolvent and unable to pay their debts at the time of the

execution of said contract and deeds; that the lands
which said Brown pretended were owned by the
Ozark Live Stock Company were at the time almost
wholly worthless; that they were situated in the
Ozark mountains, consisted of rocky hills and
mountains and were wholly unfit for agricultural
and grazing purposes; that said Ozark Live Stock
Company did not at the time, or since that time,
own any cattle, sheep or horses whatsoever; that
the statements of Brown representing appellant's
ownership of said lands and stock were false and
fraudulent and made for the fraudulent purposes
stated; that the statements of said Brown that said
real estate was unincumbered were also false and
untrue, and made for the purpose aforesaid; that
at the time the statements were made, there was a
mortgage covering all of the real estate executed
by Brown to Karl D. Norvel, in trust, for the Bank
of Steelville, in Crawford County, Missouri; that
said Brown executed the mortgage while he claimed
to hold the title thereto on January 20, 1902, for
the sum of $1,525, which mortgage was duly ack-
nowledged and recorded; that in 1903, said bank
brought suit to foreclose said mortgage against
Harvey H. Brown and the Ozark Live Stock Com-
pany, and on February 27, 1906, judgment was
rendered in said cause for $1,690.90 and costs of
suit, in favor of the bank; that thereafter in said
year 1906, said lands were sold pursuant to an order
and decree delivered to the sheriff of said county to
the Bank of Steelville; that said land was never
redeemed from said sale; that said stock, held by
Jouvenat as trustee, was never of any value what-
ever, all of which said Brown well knew; that ap-
pellee refused to accept and take said stock after
June 1, 1905, and refused to permit said Jouvenat
to execute a deed for the real estate, so held in trust

by him, to said Brown; that said Young had long prior to said date disaffirmed said deeds to the Browns and Jouvenat, and had also disaffirmed said agreement, had given proper and due notice of said disaffirmance and demanded reconveyance to herself. Appellee asks judgment canceling said contract and deeds; that her title in and to said real estate be quieted in her as against each of appellants, and for all other proper relief. The provisions of the agreement are generally set out in the complaint.

Upon request the court found the facts specially. Said findings cover nineteen printed pages of appellants' brief. No good purpose could be served by setting them out in detail. It is sufficient to say that they find all the material allegations of the complaint to be true, upon which the court stated conclusions of law as follows: That the law is with appellee and she should have her title quieted to all of the real estate described in the complaint; that the misrepresentations of appellant Harvey H. Brown were a fraud upon appellee; that said contract entered into between appellee and appellant Brown was in fraud of appellee and fraudulent, and said deeds to appellants Harvey H. Brown, Leila A. Brown and Jouvenat as trustee, were each and all in fraud of appellee, and said contract and deeds should be set aside for fraud and declared null and void and of no effect. Judgment was rendered accordingly.

It is very earnestly insisted on behalf of appellants that the complaint is obnoxious to a demurrer for the following reasons: (1) For failure to allege damage or injury; (2) for failure to disaffirm and institute the action seasonably; (3) for failure to place appellants in *statu quo* and show a willingness or ability so to do. It is also assigned and argued

that the court erred in stating its conclusions of law. Appellants very earnestly insist that the complaint is defective for the reason that it does not specifically allege that appellee was damaged because of the execution of the deeds and contract referred to in the complaint.   Appellants cite and rely mainly upon the case of *Srader* v. *Srader* (1898), 151 Ind. 339, 51 N. E. 479, which holds that a complaint failing to show that the defrauded party was damaged is fatally defective.   The facts in the Srader case are essentially different in all respects from the facts disclosed in the case at bar.   For instance, in the Srader case a cash payment of $200 was made; an existing mortgage of $500 was assumed by the purchasing parties and notes were executed for the balance of the purchase money.   The court in that case says: "There is no showing that these notes are not amply good, and worth their full face value.   For aught appearing in the complaint, the sale and conveyance of the land, under all of the circumstances, may have been conducive to the best interests of the grantor."   In the case at bar the facts alleged in the complaint disclose that appellee received nothing of value from appellants.   The stock in the Ozark Live Stock Company was wholly worthless, the land was covered by a mortgage which was afterward foreclosed; there were no sheep, cattle or horses on the premises owned by said corporation, and therefore it may be very reasonably inferred that appellants paid no part of the mortgage, because of the specific allegation hereinafter set out that appellee received nothing of value from either of the Browns by way of consideration for the transfer and agreement to transfer said real estate. We therefore conclude that from the allegations of the complaint we may reasonably infer damages

because of the fraudulent conduct of appellants. It is clearly shown that all the parties treated appellee's real estate as having value, and it is specifically alleged that appellee received nothing of value from appellant Brown, therefore damages are shown to have resulted.	This is the reasonable inference to be deduced from the language used. This court is of the opinion that the rule as laid down in the case of *Ross* v. *Hobson* (1891), 131 Ind. 166, 26 N. E. 775, should be applied in the present case as to the failure to allege the value of the real estate conveyed, and consequent damages specifically.	See also *Nysewander* v. *Lowman* (1890), 124 Ind. 584, 24 N. E. 355; *Gardner* v. *Mann* (1905), 36 Ind. App. 694, 76 N. E. 417; *Murray* v. *Jennings* (1875), 42 Conn. 9, 19 Am. Rep. 527.

What is said with respect to the failure to allege damages, is also true with respect to the third objection to the complaint, namely, that 2. there is no allegation showing appellants were placed in *statu quo*.	Appellee, having received nothing of value from appellants, could not tender back to them any property or thing of value in order to place them in *statu quo*.	The allegations of the complaint are sufficient to warrant the court in hearing evidence upon the question as to whether any consideration had been paid by appellants to appellee, including any amounts which may have been paid upon the portion of the mortgage debt assumed.	It is specifically alleged in the complaint that Leila A. Brown gave no consideration whatever, and that Harvey H. Brown gave no other or different consideration than the deposit of the Ozark Live Stock Company's capital stock, with the written agreement containing the stipulations hereinbefore set out.	All that a party who seeks to rescind a contract can do in order to

place the adverse party in *statu quo* is to return that which he has himself received. Clark, Contracts (3d ed.) 295, and authorities cited.

The second alleged reason is the failure to disaffirm the contract seasonably. It is very earnestly argued, and there is much citation of authority in support of appellant's contention. We shall proceed to a consideration of that objection. The question of how much time a party to a contract has permitted to elapse is not necessarily determinative of the right to rescind, the immediate consideration being whether the period has been long enough to result in prejudice to the other party. 6 R.C.L.932; *Basye* v. *Paola Refining Co.* (1909), 79 Kan.'755, 101 Pac. 658, 131 Am. St. 346, 25 L. R. A. (N.S.) 1302; *Roberts* v. *James* (1912), 83 N. J. L. 492, 85 Atl. 244, Ann. Cas. 1914 B 859.

What is a reasonable time necessarily depends upon the circumstances of each particular case. *Roberts* v. *James, supra.* A formal written notice is not necessary in order to rescind the contract. Some positive act on the part of him who would rescind that shows such an intention is sufficient. 6 R. C. L., *supra.*

The language of the complaint with respect to the disaffirmance of said contract as above set out, which the demurrer concedes to be true, is as follows: "That said Young has long prior to this date disaffirmed the said deed to the said Harvey H. Brown and the said deed to the said Leila A. Brown and the said deed to the said Jouvenat, and had also disaffirmed the said written contract or agreement and given proper and due notice of such disaffirmance and demanded reconveyances thereof to herself." This allegation is amply sufficient to withstand a demurrer under

the rule as laid down in the case of *Domestic Block Coal Co.* v. *DeArmey* (1913), 179 Ind. 592, 100 N. E. 675, 102 N. E. 99, which requires this court to resolve all reasonable inferences in support of the allegations of the complaint. See also *Kahle* v. *Crown Oil Co.* (1913), 180 Ind. 131, 138, 100 N. E. 681; *Taylor* v. *Griner* (1913), 55 Ind. App. 617, 620, 104 N. E. 607; *Darter* v. *Grubb* (1913), 56 Ind. App. 206, 208, 102 N. E. 843; *Rader* v. *Barrett Co.* (1914), 59 Ind. App. 27, 34, 108 N. E. 883, 884.

Appellants' learned counsel, in an exhaustive brief, have cited much authority with respect to the infirmities pointed out in the complaint, all of which relate to a period prior to the rule announced by the Supreme Court in the case of *Domestic Block Coal Co.* v. *DeArmey, supra,* and can not therefore be held to be authority for their contention.

6. The rule as now followed by both the Supreme Court and this court, and which we apply in this case, is in complete harmony with our statutory provision, and in the judgment of this court subserves the ends of justice.

Section 350 Burns 1914, §345 R. S. 1881, reads as follows: "The judgment upon overrruling a demurrer shall be that the party shall plead over; and the answer or reply shall not be deemed to overrule the objection taken by demurrer. But no objection taken by demurrer, and overruled, shall be sufficient to reverse the judgment, if it appear from the whole record that the merits of the cause have been fairly determined. * * *" See also §§407, 700 Burns 1914, §§398, 658 R. S. 1881.

With respect to the conclusions of law, it is argued that the first conclusion is entirely outside the issues. It quiets the title to the property generally in appellee. While the complaint 7. is by no means a model pleading, it seems

to have been treated by the trial court, and also
by the attorneys, as an action to quiet title, as well
as to rescind the contract and cancel the deeds.
In the first section of the brief filed by appellant's
counsel, which we have set out, they state that
this was an action to quiet title, and in the prayer
for relief, which we have also set out, there is a
demand that the title be quieted in appellee as
against appellants' claim. We are therefore con-
strained to hold that this conclusion of law is
within the issues.

Appellants also insist that upon the facts found
they were entitled to a conclusion of law show-
ing lack of diligence on the part of appellee in
seasonably disaffirming the contract and agree-
ment. In the well reasoned case of *Roberts* v.
*James, supra,* the court says the rule with respect
to diligence " 'like other rules of justice must be so
applied in the practical administration of justice
as shall best subserve, in each particular case,
the undoing of wrong, and the vindication of the
right.' * * * What is a reasonable time neces-
sarily depends on the circumstances of each partic-
ular case. It is settled in the English courts that
unless the situation of the other party has changed
to his detriment, the contract continues until the
party defrauded elects to avoid it, and he may keep
the question open as long as he does nothing to
affirm the contract. *Clough* v. *London and North-
western Railway* (1871), **L. R., 7** Ex. 26; 41 L. J.
Exch. 17; *Morrison* v. *Universal Marine Insurance
Co.* (1873), **L. R., 8 Ex. 197; 42 L. J.** Exch. 115;
*United Shoe Machinery Co. of Canada* v. *Brunet*
(1909), A. C. 330. He may even wait until action
is brought against him (*Clough* v. *London and
Northwestern Railway, ubi supra*), and a plea setting

up the fraud amounts to a rescission of the contract."
See also *Bayse* v. *Paola Refining Co., supra.*

8.   We conclude that appellants are not entitled to the conclusion of law for which they contend, under the finding of facts.

From an examination of the whole record we are of the opinion that a correct conclusion was reached in the trial court. Under such circumstances this court will not disturb the judgment for technical objections, however vigorously they may be urged. Judgment affirmed.

NOTE.—Reported in 110 N. E. 562. See under (2), (3), (4) 9 C. J. 1236, 1242, 1240; 6 Cyc 329, 300; 50 Am. Dec. 672; (7) 38 Cyc 1978.