## LAMINACK v. BLACK. (No. 3498.)

Court of Civil Appeals of Texas. Texarkana. Feb. 9, 1928.

1. Sales ⊸126(1)—One seeking to rescind purchase contract for fraud must assert right without unreasonable delay after discovering fraud.

While one induced by fraud to make a contract of purchase may either affirm contract and sue for damages on discovery of fraud or repudiate and recover consideration, party who elects to rescind and revoke the contract must assert his remedial right with diligence and must not be guilty of unreasonable or unnecessary delay in taking steps to make right effective after discovery of fraud.

2. Sales ⊸126(1)—Unnecessary delay in returning property sold after discovery of fraud imputes acquiescence, barring equitable relief.

Promptness of return or tender of property sold is essential to avoid injury or damage to seller, and unnecessary delay in proceedings for relief has effect of imputation of acquiescence in fraud, which bars equitable relief.

3. Sales ⊸126(1)—Buyer, who immediately found mule not broken to work as represented, held guilty of unreasonable delay preventing rescission for fraud, where rescission was sought two months and mule returned four months after sale.

Buyer, who within a few days after purchasing mule found the mule unfit for work, held not entitled to rescind and recover consideration on ground of fraud, of seller, who represented mule was "well broke to work," where plaintiff did not demand rescission until about two months after sale and did not make return of mule to seller, who lived only about seven miles away, until more than four months after sale, since under such circumstances buyer was guilty of unreasonable delay, defeating his right to equitable relief.

4. Sales ⊸50—Buyer who, knowing of fraud, keeps chattel and uses it to see if he has good bargain, waives seller's fraud.

Buyer who keeps chattel sold and uses it after knowing of seller's fraud, to see if he has a good bargain, is regarded as waiving fraud by positive acts of acquiescence.

5. Appeal and error ⊸843(1)—Phase of case not involved in verdict is not considered on appeal.

Reviewing court may not determine phase of case as to which no issue was involved in jury's verdict.

6. Sales ⊸133—Denial of seller's recovery for cost of feeding mule, in accordance with jury's verdict, held not error, and buyer, having rescinded sale too late, was entitled to possession.

Where jury found buyer seeking to rescind contract for sale of mule was not liable for cost alleged to have been incurred by seller in feeding it, denial of recovery to seller for such cost was not error, and buyer, whose unreasonable delay prevented rescission, was entitled to take immediate possession of mule without payment.

7. Sales ⊸130(2)—Complaint alleging purchase of mule through fraudulent representations and tender to seller, with prayer for return of purchase price, made suit one for rescission only.

Complaint alleging that plaintiff was induced to purchase mule through fraudulent representation that it was well broken and gentle to work, that he tendered return of the mule to seller on discovering falsity of representation, and containing prayer that contract be rescinded and buyer have judgment for purchase price, held to make suit one for rescission only, which could not be construed to be an action in the alternative for damages.

Appeal from Wood County Court; H. V. Puckett, Judge.

Suit by R. M. Black against E. G. Laminack, in which defendant filed a cross-action. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

The appellee brought the suit for rescission of a sale of a mule to him. He claimed that he was induced to purchase the mule through fraudulent representation that it was "perfectly gentle to handle and well broke to work." He alleged that he tendered the mule back to the defendant as soon as he discovered that "the said mule was not gentle and would not work and could not be worked and was and is, in the parlance of stockman, an outlaw to work and handling." The prayer was "that said contract be rescinded, and that he have judgment for the sum of $110 (purchase price), with interest at the rate of 6 per cent. from date of sale." The defendant answered by general denial, and specially pleaded waiver and estoppel.

The jury made special findings of fact to the effect that the mule was not well broken and gentle to work; that the representation made was untrue that the mule was safe and gentle to work in general farm work; that plaintiff purchased the mule upon the representation made; that the plaintiff demanded a rescission of the contract of sale and a return of the money paid "about April 6," after the day of purchase and delivery on February 7, 1925; that the plaintiff "kept the mule in his possession before demanding a rescission" for "about sixty days." The jury further found that "the plaintiff returned the mule" to defendant "about June 27." The court en-

tered judgment for the plaintiff in rescission of the purchase and for the recovery of the amount of purchase price paid for the mule. The suit was filed August 16, 1925.

The plaintiff paid $110 cash for the mule on February 7, 1925. The same day of purchase the mule was delivered by the defendant to the plaintiff at the plaintiff's home, about eight miles from town. According to the plaintiff's evidence, the defendant represented to him that the mule was perfectly gentle and well broken to do general farm work. Plaintiff purchased the mule upon that representation. He relied upon the representation made. The testimony of the plaintiff was that the same afternoon of the delivery of the mule he discovered that the mule was not gentle and was not well broken to work to a wagon. His son and son-in-law hitched the mule to a wagon, and they found out then and there that he was not well broken and gentle. A few days afterwards they hitched the mule first to a double plow and then to a single plow. This was, as testified by one witness, "some three or four days after the mule was left at our house." They found out that the mule was not gentle and was not well broken. They continued in their efforts to test out the mule by hitching him to a wagon and then to a plow. As testified, they continued "trying to work him several times" to a wagon and to a plow, and "he did not work well and would kick." The plaintiff admitted that he "learned within a few days after Mr. Laminack left the mule at my house that he would kick when he was harnessed and tried to be worked either to a plow or a wagon. * * * That he would not work well to a wagon. * * * That the mule would not work well to a plow." As found by the jury, and admitted by him, the plaintiff did not demand a rescission of the trade until in April, "about sixty days" after the day of delivery of the mule, and when he first discovered the mule was not well broken and gentle. The plaintiff on that date of April 6 went to defendant, who lived about seven miles distant, and informed defendant that the mule was not well broken, and demanded his money back. The defendant refused to rescind the trade and refund the money. The plaintiff continued in possession of the mule until June, more than four months after the day of sale, and then placed him in the defendant's lot, although the defendant declined to agree to take him back. The defendant offered evidence going to show that the mule was broken to work and that the plaintiff used him to do farm work up until June, when the mule was put into the defendant's lot.

A. M. Billings, of Dallas, and Jones & Jones, of Mineola, for appellant.

Bozeman & Cathey, of Quitman, for appellee.

LEVY, J. (after stating the facts as above). [1] It is the admitted rule that one induced by fraud to make a contract of purchase, although it be an executed and not an executory one, may, upon discovery of the fraud, either affirm the contract and sue for damages, or he may repudiate the contract, tender back what he has received under it, and recover what he has parted with as the consideration. 13 C. J. p. 611; 2 Black on Rescission, § 563; 2 Pomeroy on Eq. Jur. § 872. If the party elects to rescind or revoke the contract and to seek for a remedy, then it is incumbent upon him that he assert his remedial right with diligence and without delay upon becoming aware or obtaining knowledge of the fraud. It is the well-settled rule that one possessing the right to rescind on the ground of fraud, and desiring to exercise such right, must not be guilty of unreasonable or unnecessary delay in the assertion of his purpose and in taking steps to make it effective. 2 Black on Rescission, §§ 536, 538; 2 Pomeroy on Eq. Jur. § 917; Dalton Adding Mach. Sale Co. v. Wicks (Tex. Civ. App.) 283 S. W. 642; Colt Co. v. Head (Tex. Com. App.) 292 S. W. 198. Further, quoting from Hunt v. Kellum, 59 Tex. 535:

"He must restore what he had received, and replace all parties in their original situation. Moreover, he must do this within a reasonable time, and whilst the situation of the parties remained so far unchanged that they could be restored to their first position."

[2-5] Promptness of return or tender of the property as an equitable act is important and requisite in practical consequence, because delay may operate as a means of injury or damage to the party required to take back the property in loss during the interim of an advantageous use or resale of the property. 3 Elliott on Contracts, § 2434; 2 Pomeroy on Eq. Jur. § 897; Roberts v. James, 83 N. J. Law, 492, 85 A. 244, Ann. Cas. 1914D, 859. Promptness of proceedings is requisite because delay in proceedings for relief has the effect of the imputation of acquiescence, which is a bar to any equitable remedy. 2 Pomeroy on Eq. Jur. § 917; 3 Elliott on Contracts, § 2431. Acquiescence consisting of unnecessary delay after knowledge of the fraud operates to defeat the right itself of equitable relief. 2 Pomeroy on Eq. Jur. § 817. The delay, even without positive acts of ratification, amounts to a waiver of the right to rescind. 3 Elliott on Contracts, § 2433. Therefore, in view of the special findings of the jury, and in the light of the evidence of appellee, the simple question in the appeal is that of whether or not the appellee had the right and acted with the reasonable promptness required to entitle him to the remedy of rescission. The jury made the special findings that appellee was defrauded in the sale, and that he did not demand a rescission, claiming that he had been defrauded in the

trade, until about two months after the day of sale, and did not make return of the mule until more than four months after sale. The appellee kept the mule "in his possession" all that period of time. And the suit for relief was not filed until August 16, 1925, more than six months after the sale. Appellee admitted as a fact in the trial that he found out the same day of purchase, February 7, 1925, that the mule was not entirely of the disposition and fitness for use that appellant represented him to be. And, as further appears, "within a few days" afterwards appellee's son and son-in-law made repeated additional trials and extra efforts to induce the mule to work. Through these affirmative means and ample efforts to test out the mule it was made sufficiently evident, and afforded the appellee knowledge enough, that the mule was not as represented to be, "perfectly gentle to handle and well broke to work." If these were the facts appellee's testimony goes to show, then he was armed with knowledge of the fraud, with the right to rescind if seasonably and promptly demanded. He had fair indication of the falsity of the representation on the afternoon of the delivery of the mule, and he necessarily had full and sufficient knowledge thereof from the diligent efforts during the first two weeks thereafter. That was a reasonable time in which to make the test. By that time he could have fairly investigated and ascertained, and did so, that the representation made was untrue and that he had been deceived in the trade. No more efforts than so made could have been required of him to test out the mule without being subjected to the imputation of ratification of the trade by positive acts of ratification in continued use of the mule after knowledge of the fraud and while he was free from its influence. He could not reasonably claim that he was in ignorance of the fraud through the efforts made to test out the mule shortly after the day of purchase. These facts so appearing, then the effect of the special findings of the jury, that the demand for rescission was made on April 6, is that the appellee did not act with the reasonable promptness required in order to avoid the imputation of acquiescence, defeating his right to the equitable relief of rescission. Knowing reasonably and sufficiently within the first two weeks' trials after delivery of the rule that fraud was practiced upon him, the appellee delayed in offering to revoke the trade for some six weeks, and delayed in actually tendering back the mule for some four months, and delayed in instituting suit until some six months after day of sale. There is no pretense or claim in the evidence of any

adequate cause for delay of so long a time in demanding a rescission and invoking return of the mule after obtaining knowledge of the fraud. The parties lived only about seven miles apart, and the evidence indicates that the seller was not absent, but at home all the time. There is no pretense that appellant induced the delay. The appellee was not under disability preventing him from acting promptly in demanding rescission. In view of the circumstances, the location of the parties with respect to each other, the subject-matter of the trade, the opportunity to demand rescission, and the time of acquiring knowledge by appellee of the fraud, the delay in making demand for rescission was unreasonable. As analogous: Collins v. Tigner, 5 Pennewill (Del.) 345, 60 A. 978 (delay of three weeks); Rosenfield v. Swenson, 45 Minn. 190, 47 N. W. 718 (delay of six weeks); Kleeb v. Lumber Co., 27 Wash. 648, 68 P. 202 (delay of sixty days). If, as appears, the appellee kept the mule and used it, after knowing of the fraud, to see if he had a good bargain, then such act may be regarded as a waiver of the fraud by positive acts of acquiescence. But as that issue was not involved in the verdict of the jury, that phase of the case may not be here determined. In view of the evidence and the special findings of the jury mentioned, the judgment should have been the reverse of that awarded by the court. The appellant's request for judgment on the verdict in his favor should have been granted.

[6] The jury made findings against the appellant's claim for cost of feeding the mule, as sought in the cross-action. In view of this finding and in keeping with such verdict, it was not error to deny the appellant recovery for the alleged cost of feeding the mule. The appellee, as a consequence, would be entitled to retake immediate possession of the mule, free of any such claim for cost of feed.

[7] The present case is not comparable to the case of Hubbs v. Marshall (Tex. Civ. App.) 175 S. W. 716. The judgment in that case was held supportable on the ground that the suit was, in substantial form, a suit for damages. The present suit, according to the phraseology of the plaintiff's pleading, is distinctly a suit for rescission claiming the refund of the whole purchase price, and it cannot be construed to be an action in the alternative for damages. The parties have treated the suit as one distinctly for rescission only.

The judgment is reversed and judgment is here rendered for appellant, with costs of appeal and of the trial courts. Appellant is denied recovery on cross-action for alleged cost of feeding the mule.