## RAGNES v. OLIVER.
### No. 9404.

Court of Civil Appeals of Texas. Galveston.
Feb. 27, 1930.

J. M. Gibson, of Houston, for appellant.
M. G. Fakes, of Houston, for appellee.

PLEASANTS, C. J.

This litigation was begun by a suit brought by appellee against appellant to recover a balance alleged to be due upon a note for $1,250 executed by appellant in part payment for a musical instrument called a Kohler & Campbell piano, with its attachments and a music roll, sold to him by appellee, and to foreclose a chattel mortgage given by appellant upon the piano and attachments to secure the payment of the note.

Appellant answered this petition by a plea of fraud and misrepresentation on the part of appellee in procuring the execution by appellant of the note and mortgage sued on; and by an affirmative pleading sought a rescission of the contract of sale and the recovery from appellee of a Concord player piano of the value of $500, which he delivered to appellee in part payment of the instrument sold him by the appellee, and the sum of $265, which he alleges he had paid appellee under the fraudulent contract.

In answer to appellant's pleading against him, appellee by amended petition repeated the allegations of his original petition as to the contract of sale and the execution of the note and mortgage by appellant, denied all of appellant's averments of fraud and misrepresentation in the procurement of the contract, admitted the delivery to him by appellant of the Concord player piano, valued at $500, in part payment of the purchase price of the instrument sold by him to appellant, and the payment by appellant of $265 on the note sued on; and prayed for the balance of the principal and interest due upon the note, and attorney's fees as stipulated in the note.

Appellant answered this pleading of appellee by a general demurrer and general denial, and by special plea in which it is averred that as soon as he discovered that the piano player sold him by appellee was "unserviceable and unfit for use and that the same could not be repaired he offered to return the same if the said plaintiff would pay him for the instrument that plaintiff took in exchange for said Piano Player and that he could not therefore be held or required to return the Piano Player as that would have left him without any security for his claim and such demands for such return was never made by said plaintiff with a tender to this defendant of the value of said instrument received in exchange, wherefore this defendant says that said plaintiff is not entitled to any relief because of his said plea, and of this he puts himself upon the Country."

The trial in the court below without a jury resulted in a judgment in favor of plaintiff for the amount of principal and interest found due upon the note, and for foreclosure of the chattel mortgage given to secure the payment of the note.

This appeal is predicated upon the following propositions:

"No. 1. As the great weight of evidence showed, the player-piano sold appellant did not execute music as guaranteed, the Court should have awarded appellant a decree that appellant recover all the amounts paid by him to said appellee, including the value of the player-piano taken in trade, or, in the alternative, should have ordered the player-piano fixed by appellee so as it would execute such music, before any sale should be had of same to satisfy appellee's claim.

"No. 2. The cross complaint of appellant showing a delivery to appellee of a Concord player-piano of the value of $500.00, as part of the purchase money of the Kohler & Campbell player-piano, and the failure of appellee in his pleading to deny the receipt of this Concord player-piano, or its value, the undisputed evidence showing the appellee had received and retained this Concord player-piano and that it was of the value of $500.00, the judgment denying the appellant the right to recover the same of appellee was without support in the pleading and evidence and was fundamentally erroneous.

"No. 3. The undisputed evidence showing that appellee had obtained and retained as part payment on the player-piano sold to appellant a Concord player-piano of the value of $500.00 entitled the appellant to a judgment that when the player-piano, subject of suit and foreclosure, was sold, that appellant should first be paid out of the proceeds of sale said $500.00."

It would serve no useful purpose to discuss these propositions categorically. None of them on their face present any sufficient ground for reversal of the judgment.

If, as stated in the first proposition, "the great weight of the evidence showed that the instrument sold appellant by the appellee did not execute music as guaranteed," the trial court could not have rescinded the contract on this ground unless the evidence went further and was sufficient to sustain a finding that the instrument could not be made to

operate as guaranteed and was worthless for the purpose for which it was sold to appellant. In the absence of such evidence, appellant would only be entitled to recover as damages the difference between the value of the instrument sold him and the amount which he agreed to pay for it. There is no pleading by appellant for such damages, and no evidence upon which to base a judgment therefor.

■ For a similar reason neither the second or third propositions can be sustained. Appellant could not recover the value of the piano turned over to appellee in part payment for the instrument sold him by the appellee without showing grounds for a rescission of the contract, or damages to the amount of the value of the piano, caused by appellee's breach of warranty, and neither of these essentials are embodied in the propositions.

■ There is some conflict in the testimony, but the evidence is sufficient to sustain the finding that there was no fraud or misrepresentation on the part of appellee in the procurement of the contract, and any defects in operation of the piano were corrected by appellee when called upon so to do by appellant.

Appellee testified:

"I do recall, in November, 1926, the time when it appears Mr. Ragnes purchased this piano player from me; it was a Kohler & Campbell piano with a Welty Mignor action; I recall that transaction.

"Before we sell these pianos they are always tuned, regulated and tested when we get them on the floor and then when we deliver them to a customer they are always followed up, tuned, tested and regulated. At the time Mr. and Mrs. Ragnes looked at this instrument in question it was played for them as we always demonstrate a piano before we sell it and if there is anything wrong with it we adjust it. * * *

"Now, as to the testimony of Mrs. Ragnes, that the player part of the piano would operate all right a few days after being adjusted, etc.; any time any customer calls up and says their piano is wrong we always send out a man as quickly as possible to see what the trouble is and adjust it. That has been my policy all through my business career, and I had two of the best player piano men in the country that I could put my finger on and they always went out and adjusted them and reported them in working order when they got through. As to Mrs. Ragnes' complaints, I always sent a man out whenever any complaints were made, all the time; that was our policy to take care of it. We couldn't expect payments if we didn't do that, and so we did it.

"I do not recall of Mr. and Mrs. Ragnes ever stating to me why they wouldn't make payments. In fact, there was always a promise of a payment a little later on, but no reason why they were not making them just now, but they always promised to make payments right along. As to Mrs. Ragnes' statement that I promised always to send a man out there and didn't do it; I sent a man out every time they complained. I know I sent a man out there very often; in fact, more often than to any other piano I sold because I was anxious to keep it in order."

Mr. Jungling, who was an expert in the adjustment and repair of pianos and who was employed by appellee to examine and correct any defects in the piano sold to appellant, testified:

"I do hold myself out as an expert in my line of work. I have worked on pianos of most types. I have been repairing player pianos about 10 or 15 years. While in Houston I worked for Oliver Music House, Brooks-Mays Piano Company and others.

"I was at one time called upon by Oliver's Music House to work on a Kohler & Campbell piano, with player attachment, that they had sold to one G. E. Ragnes, and I went to Mr. Ragnes' residence and worked on Kohler-Campbell No. 69749, with Welty-Mignor reproducing player. On my second visit there I did mostly checking over, tuning, making a few regulations on piano and player, the replay lever not working properly but adjusted it and left it in first-class working condition.

"On my second visit out there I found the piano in the condition last above stated.

"I found everything in first-class condition on the piano and found no defects with the exception of some irregularities in adjustments."

■ The defendant testified that he made payments on his contract for a year after the piano sold him by appellee began to give him trouble by its defective operation, and that when he made his last payment in December, 1927, he told the appellee to fix it up and appellee replied that he would fix it.

There was no demand at that time for a rescission of the contract, and none was made until this suit was filed. This evidence supports the further conclusion that if appellant ever had any ground for a rescission of the contract, his right to such remedy was lost by his failure to assert it within a reasonable time. Laminack v. Black (Tex. Civ. App.) 3 S.W.(2d) 824.

We think the judgment should be affirmed, and it has been so ordered.

Affirmed.