ROSENTHAL, MEYER & CO. v. F. M. MIDDLEBROOK.

(Case No. 5228.)

1. EVIDENCE.— In suit to recover damages for the wrongful seizure of goods under attachment, the issues raised called in question the ownership of the goods by the plaintiff Middlebrook, when they were seized. A witness was asked "if he knew the date of the attachment, and in whose possession the goods were at the time, and to state all the facts known to him concerning the possession of said party of said goods." He answered that they were in possession of one Porter, as his agent, to hold until satisfactory arrangements were made concerning the payment for said goods, and when they were paid for he considered the goods belonged to him (Middlebrook). *Held*, that the latter portion of the answer was not inadmissible on the ground that it involved the statement of a conclusion of law.

2. SAME.— A witness when asked to state his knowledge of a fact cannot be permitted to state that he found out specified facts not resting in his own personal knowledge, and without disclosing the source of his information.

3. CHARGE OF COURT.— In testing the correctness of a charge of the court, it must not be regarded as an abstract proposition, but must be considered in connection with the issue and the evidence. (Citing Norvell v. Oury, 13 Tex., 31, and Wintz v. Morrison, 17 Tex., 372.)

4. SAME.— See opinion for a charge asked in a suit involving the question of a fraudulent conveyance of property, in which the court was asked to state what acts would constitute a hindering, delaying and defrauding of creditors, the refusal to give which was held not to be error.

5. SAME.— When a charge asked embraces, among other things proper to be given, an erroneous proposition, or when, from the terms in which that which would otherwise be proper is stated, it is improper to give, the judge may refuse to give it; it is not the duty of the judge to separate good from bad propositions when thus erroneously blended, and give those not objectionable.

APPEAL from Hill. Tried below before the Hon. Jo Abbott.

This suit was brought in the district court of Hill county, on July 17, 1882, by F. M. Middlebrook against Rosenthal, Meyer & Co., to recover the value of a stock of goods alleged to have been seized and converted by defendants under attachment and orders thereafter made in a suit by defendants against Hunt & Son. Verdict and judgment for plaintiffs for $2,310.75. The defendants had pleaded a general denial, and set up that the property was not, at the seizure and conversion, the property of plaintiff; also that it was seized by virtue of a valid writ of attachment regularly sued out against Hunt & Son, the debtors of defendants; that the property belonged to Hunt & Son; that Middlebrook claimed the same by virtue of a pretended sale or transfer made to him by Hunt & Son a few days before the levy of attachment, and that if there was such transfer it was made by Hunt & Son with intent to hinder, delay and defraud their creditors and defendants, which fraudulent intent was known, and could have been known, by the vendee by reasonable care, and that the transfer, if made, was void as to defendants.

*Alexander & Winter*, for appellant.

*B. D. Tarlton*, for appellee.

No briefs are found with the record.

WALKER, P. J. COM. APP.— The only questions presented in the brief of appellants' counsel arise on the exclusion of evidence and

on the alleged errors in the charge given by the court, and its refusal to give charges asked for by the appellants.

The witness Hunt was asked by the defendants " if he knew the date of the attachment, and in whose possession the goods were at the time; and to state all the facts known to him concerning the possession of said party of said goods?" The answer was, "that they were in possession of Porter, as his agent, to hold until satisfactory arrangements were made concerning the payment for said goods." The answer thus far was not objected to, but the answer proceeded thus: "and when they were paid for I then considered the goods belonged to him (Middlebrook)." This portion was objected to by the plaintiff, and it was excluded. The objectionable part admits of being understood in two aspects: in the one as being an indirect suggestion of the fact that Porter's possession was to continue upon condition until the goods were paid for by Middlebrook, and on the happening of that event that his possession of the goods would be for Middlebrook. Under this interpretation that part of the answer would be responsive to the question asked and explanatory of the terms and limitations of Porter's actual possession. The other aspect of the answer may be referred to an expression of a legal conclusion merely upon a question of ownership of the goods as the consequence of the fact of payment; under a view of that kind the answer would not be responsive nor admissible as competent legal evidence.

The question asked of the witness was very general and admitted of a comprehensive and latitudinous answer, and we think it cannot be regarded as subject to the objection that it was not responsive or that it involved the statement of a conclusion of law. It would have been proper for the court to have admitted the evidence with such explanation of the purposes for which it was admissible as were appropriate, if under the issues it had been deemed essential. But the exclusion of the evidence did not operate to the injury of the appellants; for all the facts concerning the subject-matter of the witness' answer objected to were fully before the court and jury through abundant and uncontroverted evidence, and the answer objected to added no fact or circumstance to it which might be legitimately used. The mere exclusion of evidence which is competent will not necessarily operate to reverse a judgment, especially where it is apparent that the party offering it is not injured thereby. 16 Tex., 364; 22 Tex., 9; 16 Tex., 413; 8 Tex., 150; 31 Tex., 643; 44 Tex., 17; 23 Tex., 47.

The same witness in his depositions was thus interrogated: "State

all you know concerning the transaction between Hunt & Son and F. M. Middlebrook, or H. C. Ford, in reference to said stock of goods, as if specially interrogated."

Among other matters stated by the witness in response to this question, he said: "I afterwards found out that Ford had written to Rosenthal, Meyer & Co., one of my creditors, that I was insolvent and they had better come up immediately and protect their interests. This was when Porter held the goods for me, and Ford was trying to get a deduction. About two or three days after this the attachment was run on my stock."

Objected to by plaintiffs and the evidence excluded, "because the source of the witness' information was not stated, it being hearsay in this form; and second, it was not responsive to any question,— the question being general and relating only to the transaction between the parties." The court ruled correctly. The language of the answer implies that the facts stated by the witness were derived through information conveyed to him by other persons, and that they did not rest in his personal knowledge of the facts stated; nor does the answer disclose any source from which his information was derived that would contribute an exception to the rule excluding mere hearsay evidence.

The charge of the court presented very fully, clearly and correctly the various phases under which the contract of sale of the goods from Hunt to Middlebrook would have the effect to pass a valid title to them, as well as those under which the title would not pass as against Hunt's creditors. In the fourth subdivision of the charge it presented the conditions under which the sale might be valid or invalid accordingly as it might be affected by an intent to hinder, delay or defraud Hunt's creditors, and in connection with the proposition that if the facts and circumstances of the transaction of sale did not render Middlebrook liable as a participant in such intent, that he would acquire a good title to the goods if he paid a valuable consideration for them, the court charged, in effect, that Middlebrook would take a good title if he paid, at the time of the purchase, the whole amount of the consideration or a part of it only. It is objected, under the assignment of errors, that the court erred because the charge thereby assumed that the sale was a completed one to Middlebrook, unless the sale appeared to be fraudulent. The same objection is made, and upon similar grounds, to the sixth subdivision of the charge. The charge of the court taken as a whole, or viewed in its several parts, is not obnoxious to these objections. Those portions of the charge which are involved under the objec-

tions that are made presented to the jury the legal propositions that were pertinent to the question of sales made to hinder, delay or defraud creditors, on the assumption that the transaction otherwise amounted to a sale, and upon the hypothesis that the essential elements of a contract of a valid sale existed, unless they were neutralized by an illegal intent affecting the transaction. The charge elsewhere defined properly to the jury what facts were requisite to constitute the transaction between Hunt and Middlebrook a sale, putting aside the question of an intent to hinder, delay or defraud creditors, and we are clearly of opinion that the assignment is not well taken. There was no room afforded by the charge for the jury to have been misled to the conclusion that the court meant to indicate an opinion that the sale was a completed one in those portions of the charge to which exception was taken. If, however, the charge had thus assumed that the sale had been completed, the undisputed facts in evidence concerning the transaction showed that the sale was, in fact, consummated. Hunt testified that the goods were sold and delivered to Middlebrook's agent, and that the subsequent possession of them by Porter was in the capacity of trustee to hold "until the balance of the pay was satisfactory." He stated that he delivered the goods to Ford, who was acting as agent for Middlebrook, and that Ford delivered them to Porter for the purpose above stated.

Ford's testimony corresponds on these facts with Hunt's, and states the fact that three wagon loads of the goods had been sent by him before the understanding was had as to Porter's holding the goods as a mutual trustee for the contracting parties. Hunt received payment at the time of the delivery to the amount of $785; and subsequently, whilst the goods were in the hands of Porter, and before the defendants attached the goods, the further stipulated payment on the contract of sale of two promissory notes, aggregating in amount about $500, was also made. This identical transaction, and which involved the question as to whether the sale under consideration was or not a complete sale, passing the title to Middlebrook, was considered and determined in the case of Hunt v. Kellum & Rotan, 59 Tex., 535; and upon the same evidence, substantially, that is here presented, it was held that the sale was completed. Under no view that can be taken of the charge in the respect complained of was there any error to the injury of the appellants. In testing the correctness of instructions they must not be taken as abstract propositions, but must be considered in connection with the issue and the evidence. Norvell v. Oury, 13 Tex., 31.

See Williams *v.* Conger, 49 Tex., 582; Wintz *v.* Morrison, 17 Tex., 372, and the cases cited *supra.*

The charge of the court is objected to as being too general and is not sufficiently specific as applicable to the facts, " because it fails to instruct the jury what, in law, would be sufficient to constitute fraud, delay, or hindrance of creditors, evidence having been introduced showing the insolvency of Hunt & Son, and a knowledge of said fact on the part of Ford, agent of plaintiff; and the sale of goods made in bulk, out of the usual course of trade; the jury should have been instructed as to the effects of this in law." In this connection it is urged that the court erred in refusing to give instructions asked by the defendants, which presented the law applicable to the above stated theory of the law as it ought to have been submitted.

It is not objected that the charge of the court failed to sufficiently charge the law in respect to the general proposition as to the effect of a sale of goods if made under circumstances that would be deemed in law as made to hinder, delay, or defraud creditors; the only objection to it is that it did not define what would constitute such hindrance, delay or fraud, and that the court refused to supply such deficiency in failing to give the defendants' instructions. The charge of the court being correct as far as it went in giving the law applicable to the case, it devolved on the appellants to submit correct instructions as to the aspect of the case as developed by the evidence under which they desired the law of it to be presented. The instructions that were asked to be given submitted in effect the propositions that if Hunt was insolvent, and that fact was known or might have been known by due prudence and inquiry on the part of Middlebrook, or his agent, Ford; that if the sale was out of the usual course of trade; that it was agreed that the property should remain in the hands of a third party as bailee of the seller; and the sale was to be consummated upon the performance of some act of the purchaser (delivery of the notes contemplated and stipulated for in the trade), to be performed at an indefinite time in the future, that the necessary effect was to hinder, delay and defraud creditors. To have given such instructions would have been erroneous and misleading, because inapplicable to the evidence in the case if fairly and reasonably construed. It assumed that there was evidence which allowed such deductions to be drawn as are hypothetically supposed, whereas, as we have seen (Hunt *v.* Kellum, 59 Tex., 537) the legal effect of the facts of the transaction of sale negatives one of the principal bases on which the instruction rests, viz., the supposed incompleteness of the sale of goods at the time when they

were placed in the possession of Porter, and that there remained any act of the purchaser to be done at an indefinite time in the future, in order to render the sale valid and immediately effectual.

The transaction being manifestly wholly different from the state of case supposed, the instructions were inappropriate and the court properly refused them.    When the charge asked embraces an erroneous proposition, or is not legal and proper in the very terms in which it is asked, the judge may refuse to give it, for it is not his duty to separate propositions connected together in an instruction, one of which is and the other is not law, for the purpose of giving the part which would have been proper, if not presented in an objectionable form and connection.    Hardy v. De Leon, 5 Tex., 211; Wells v. Barnett, 7 Tex., 584; Ratcliff v. Baird, 14 Tex., 43; McCown v. Schrimpf, 21 Tex., 22   Gray v. Burk, 19 Tex., 228, Patton v. Gregory 21 Tex., 513.

How far it might have been appropriate for the court to have charged the law specially as to the effect and bearing of the evidence tending to show the insolvency of Hunt & Son, and the knowledge, or the knowledge which ought to have been gained on that subject by Middlebrook or by Ford, in connection with the fact that the sale was made out of the usual course of trade, as proper to be considered by the jury under the issue as to fraud, hindrance or delay of creditors, need not be discussed.    Those circumstances appear to be the main, if not the only, evidence which bore with sufficient directness upon that issue to have required a special charge as to their bearing upon that issue.

There is nothing in the record to warrant our belief that the failure of the court to charge more explicitly than was done operated to the injury of the appellants.    The only facts pertinent to the issue in question were few, and the principles of law under which they were to be applied under the general charge of the court were simple, and it may well be inferred that the able counsel of the appellants duly enforced their exposition before the jury in such a manner as to enable them to properly apply the charge to the evidence in the case.

There remain several other assigned grounds of error in the charge of the court and for refusal to give instructions asked which we have considered, but do not regard it as necessary to discuss. We are of opinion that there is no error for which the judgment ought to be reversed, and we conclude that it should be affirmed.

AFFIRMED.

[Opinion adopted February 16, 1885.]