## CITY OF BROWNSVILLE v. CRIXELL.*
### (No. 7389.)

(Court of Civil Appeals of Texas, San Antonio. June 16, 1925. Rehearing Denied June 26, 1925.)

**1. Pleading ⊜236(1)—Amendment of pleadings within trial court's sound discretion.**

It is within trial court's sound discretion to allow amendments to pleadings, if not arbitrarily used to manifest injury of other party.

**2. Continuance ⊜30—Court must permit defendant to withdraw announcement of ready, and grant postponement or continuance, if amendment sets up different cause of action.**

If amendment of petition clearly sets up different cause of action, it is court's duty as matter of law, on request, to permit defendant to withdraw announcement of ready for trial on ground of surprise, and grant postponement or continuance.

**3. Pleading ⊜248(14)—Amendment of petition as to prayer for damages held not to set up new cause of action.**

Amendment of petition, alleging damage in stated sum, by prayer for difference between market value of lots before and after destruction of improvements thereon by fire, held not to set up new cause of action, but to merely allege damages suffered more definitely.

**4. Continuance ⊜30—Defendant should not be required to proceed to trial, where pleadings are so materially changed as to require new pleadings and different testimony.**

Defendant should never be required to proceed to trial, where pleadings are so materially changed as to require new pleadings and other or different testimony than would be required to meet issues first presented.

**5. Pleading ⊜236(6) — Allowing amendment of petition as to prayer for damages held not abuse of discretion, nor materially injurious to defendant.**

Allowing amendment of petition, alleging damage in stated sum, by prayer for difference between market value of lots with improvements thereon before destruction of latter by fire, and market value of premises after fire, held not abuse of discretion or materially injurious to defendant.

**6. Trial ⊜101—General exception to testimony already given, without request for charge to disregard, insufficient.**

General exception to testimony already given, without request for charge to disregard any of it, is insufficient.

**7. Appeal and error ⊜882(9)—Admission of testimony, drawn from same witness on cross-examination by plaintiff in error, not error.**

Admission of testimony, drawn from same witness on cross-examination by plaintiff in error, held not error.

**8. Appeal and error ⊜1051(2)—Admission of hearsay testimony as to uncontroverted matter harmless.**

Admission of testimony, that witness' uncle told him that he had told defendant city's elec-

trician to remove wires alleged to have set fire to plaintiff's house, held harmless, in view of uncontradicted testimony that such electrician had been requested to remove wires.

**9. Evidence ⊜552—Testimony of experts answering hypothetical questions admissible.**

Testimony of experts, in answer to hypothetical questions, is generally only opinion testimony, which jury may or may not believe, but is admissible.

**10. Evidence ⊜529—Expert testimony that contact between electric wires near house would set it on fire held admissible.**

Expert testimony that contact between electric wires near house would set it on fire held admissible.

**11. Evidence ⊜529 — Expert opinion that transformer near house at time of fire was dangerous held proper for jury to consider.**

Expert opinion, based on statement to witness by city electrician, that transformer near plaintiff's house at time of fire was dangerous, held proper for jury to consider.

**12. Trial ⊜352(4)—Evidence that transformer near house destroyed by fire was defective held relevant, and special issue as to negligence in maintaining service wire only properly refused.**

Where defendant introduced evidence of existence of transformer near plaintiff's house to rebut possibility that fire destroying latter originated from electric wiring near house, testimony that transformer was defective and dangerous was relevant, and court properly refused defendant's special issue submitting only question of negligence in constructing /and maintaining service wire dangerously near house.

**13. Electricity ⊜19(2)—Petition held broad enough to permit proof fire caused by defective transformer or other defect in wiring.**

Acts causing destruction of house by fire held pleaded broadly enough to permit evidence that fire was caused by defective transformer, or any other defect in electric wiring, or other thing connected therewith.

**14. Evidence ⊜245—City electrician's acts in discharge of duty and declarations as to what caused fire held admissible and binding on city.**

Acts of city's foreman in discharge of duty to see that there were no defective parts in city's electrical equipment, and his declarations as to what caused fire which destroyed plaintiff's house, held admissible and binding on defendant city.

**15. Trial ⊜260(1)—Refusal of charge fully covered by charges given not error.**

Refusal of charge fully covered by charges given is not error.

**16. Trial ⊜252(8)—Charge submitting issue as to whether intervening cause, of which there was no evidence, was proximate cause of fire held properly refused.**

Charge presenting issue as to whether city's negligence in maintaining electric wires near house, or some intervening cause of which there

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction November 11, 1925.

was no evidence, was proximate cause of· destruction of house by fire, *held* properly refused.

**17. Damages ⬪217—Instruction on measure of damages held unnecessary and inapplicable in case submitted on special issues.**

Charge defining measure of damages in cases of injury to realty ·and personalty respectively *held* unnecessary and inapplicable in case submitted on special issues as to reasonable market value of realty immediately before and after destruction of improvements thereon by fire.

**18. Trial ⬪251 (8)—Charge held properly refused as limiting negligence in constructing service wires to specifie post not mentioned in petition.**

Charge erroneously stating that petition .alleged that city was negligent in constructing service wires from certain post *held* properly refused, as limiting negligence to specific post not mentioned in petition.

**19. Trial ⬪352 (4)—Special issue, not submitting values of improvements destroyed by fire, held properly refused.**

Special issues, not including values of improvements on realty, which were required to be found to assess correct measure of damages for destruction of house and contents by fire, *held* properly refused.

**20. Trial ⬪207—Charge permitting consideration of testimony as to what witness was told by another witness, as affecting latter's credibility, held not error.**

Charge that jury could consider testimony ·as to what witness was told by another witness, not as evidence of defendant's negligence, but as affecting credibility of latter witness, *held* not ·error.

**21. New trial ⬪52 — Jurors' preliminary agreement that two-thirds majority would be required to get questions in form· for vote on whole held not misconduct requiring reversal.**

That one or more jurymen made preliminary agreement ·that it would take two-thirds majority to get questions in form for vote on whole *held* not misconduct requiring reversal, where verdict was unanimous on final ballot.

**22. New trial ⬪52—Given broad latitude in method of reaching verdict.**

Jurors are given very broad latitude in .method of· reaching verdict.

**23. Appeal and error ⬪978(3)—Trial court's denial of new trial for misconduct of jury not disturbed in absence of gross abuse of discretion.**

Appellate court will not interfere with exer- ·cise of trial court's discretion in denying new trial for misconduct of jury on testimony of members thereof, unless gross abuse of discretion appears.

Error from District Court, Cameron County ; W. B. Hopkins, Judge.

Action by Teofilo Crixell, Sr., against the City of Brownsville. Judgment for plaintiff, and defendant brings error. Affirmed.

Seabury, George & Taylor, of Brownsville, for plaintiff in. error.

· Graham & Graham, of Brownsville, for defendant in error.

COBBS, J. This is a suit instituted by defendant in error, Teofilo Crixell, Sr., in the district court of Cameron county, Tex., against the city of Brownsville, a municipal corporation, in which defendant in error sues for damages in the sum of $7,500, alleged to be the value of certain houses and outhouses situated on lots 1, 2, and 3 in block 110, of the city of Brownsville, and the further damages in the sum of $4,901, alleged to be the value of certain household goods on or about the 11th day of October, 1919, which defendant in error alleges in his said original petition were destroyed by the negligence of the plaintiff in error, its agents, servants, and employees, "by negligently so constructing one of its electric wires in reaching from one place to another as that said wire passed dangerously near the corner of an upper story of plaintiff's said residence building, and that the said agents, servants, and employees of the defendant, whose names are to plaintiff unknown, at the same time negligently attached said electric light wire to the corner of plaintiff's said residence building at a point where said wire passed nearest to plaintiff's said building, and the defendant, acting through its agents, servants and employees, especially through Frank Ramsey, its city electrician, negligently continued to maintain said electric light wire as it had been so attached to plaintiff's residence, until said plaintiff's residence was destroyed by fire, as hereinafter alleged."

Defendant in error further alleged that plaintiff in error further negligently failed and refused to remove said wire and to detach the same from his residence, where it was attached, and as a result thereof the current of electricity which was passing over that wire from the power plant did, on the 11th day of October, 1919, set fire to the residence of said defendant in error at or near the point where such wire was attached to his said residence, and his residence, household goods, furniture, etc., were all destroyed by fire, to defendant in error's damage in the sum of $12,401.50.

Defendant in error further alleged the negligence of the fire department of the city of Brownsville in extinguishing his fire.

On November 13, 1924, after these parties had announced ready for trial and a jury had been selected, plaintiff filed, over the objection of the defendant, his first amended original petition, in which he brought forward his allegations as to negligence on the part of the city in substance the same as is incorporated in his original petition, but in said amended original petition he sued for damages for the difference between the market value of his

lots, with the improvements thereon, before the fire, and market value of the premises after the fire had destroyed his improvements. With this difference, his amended original petition is the same as his original petition. The defendant answered by demurrers and general denial. The case was submitted to a jury, and upon consideration by the jury of their verdict they returned into court their answers to special interrogatories propounded to them, and the court, upon consideration of the verdict of said jury, rendered against the defendant city for $8,145, with interest thereon at the rate of 6 per cent. per annum from October 11, 1919, as being the amount of his damages sustained by the destruction of his residence and outhouses, furniture, etc., by fire, caused by the electric light wires of the city of Brownsville, and the further sum of $275, with interest thereon at the rate of 6 per cent. per annum from October 11, 1919, being the value of two trunks and their contents.

Defendant in error approves of the foregoing statement of the case, as made by plaintiff in error, with this exception: That the wording is so arranged as to bear the construction that in the amended original petition the plaintiff sued for different damages than as alleged in the original petition, when as a matter of fact the same damages were sought under the same cause of action, the only difference being that in the original petition the mode of ascertaining the values of the improvements on the real estate so alleged was not stated, while in the amendment the mode of ascertaining the value of same was stated, to wit, the difference between the market value of the lots with the improvements thereon immediately before the fire, and the value of same immediately after the fire; in other words showing the legal measure of his damages, the sum of which is alleged as $7,500, the same amount alleged in the original petition, and also the value of the personal property destroyed is alleged as $4,901.50 the same as in the original petition, the total amount sued for being $12,401.50 damages, the same as in the original petition, both petitions containing the usual general prayer.

We have so fully set out the pleadings, because plaintiff in error complains that a new cause of action was set out by the amendment.

Defendant in error objects to the consideration of certain propositions presented by plaintiff in error for reasons stated. We do not think it necessary to express any opinion thereon, for the reason that the brief, on the whole, presents the alleged material errors of law complained of, and for that reason we will consider the case.

For simplicity in discussing this case we will call the plaintiff in error, "plaintiff," and the defendant in error, "defendant."

The first error presented is a complaint against the action of the court in permitting defendant, after both parties had announced ready for trial and the jury selected, to file his first amended original petition, setting up another and different alleged cause of action to that which was alleged in plaintiff's original petition, and by so doing the court arbitrarily abused its sound discretion, which thereby caused surprise to plaintiff in error by the new alleged matters set forth in the amendment that were not in the original pleading. If that were so, then, of course, the court erred. The issue on that point is sharply drawn out in the pleading as above set forth.

[1] On that very question this court has heretofore written very clearly. Many times the appellate courts have held, and the rule is very well settled, that it is a matter within the court's sound discretion to allow all amendments, provided, of course, the discretion is not arbitrarily used to the manifest injury of the other party. We do not think the amendment complained of made a new cause of action, or required plaintiff in error to produce other evidence in its defense than was readily available, if other evidence were required to be used primarily that was not anticipated by the original pleading.

[2] If an amendment clearly sets up a new and different cause of action, upon request, it is the duty of the court as a matter of law to permit the defendant to withdraw his announcement of ready for trial on the ground of surprise, and grant a postponement or continuance as the case may be.

[3, 4] It is apparent here that the amendment is not a new cause of action at all; it merely more definitely alleges the damages done and suffered, just as the original petition did generally. Perhaps it may be said that it was so changed as to more correctly state the correct measure of damage in such cases, in accordance with the rule of law. If that had not been done, the court in its charge, as a matter of law, would have been required to do it anyway, for there was but one way in which to measure the damages. A defendant should never be required to proceed to the trial of a case where the pleadings are so materially changed as to require new pleadings and other or different testimony than would be required to meet the issues presented, in the first instance, by the original case.

[5] We think both petitions set out enough to show that the claim for damages was predicated upon the difference between the market value of the lots (real estate) with the improvements thereon immediately before the fire and the value of the lots with the improvements burned off immediately after the fire. What is sought to be recovered is the value of the destroyed property. The measure of damages and the rule to prove the value is a method of procedure.

The contention of plaintiff herein is that

the two petitions are materially different in this, that the original petition did not involve the question as to the value of the lots themselves, nor the location of the lots nor their adaptability for any use other than that to which the defendant had been putting them; while the amended original petition, filed after both parties had announced ready for trial and jury selected, made a new cause of action including the value of the lots after the improvements were destroyed by fire; because in the first instance the lots and their location were not in issue, neither their use for other and different purposes than that of a residence, and their value for such other purposes were not a material issue until the amendment was filed. The true issue was the damages caused by the fire to the improvements, and the manner of proving the value of the damage was to be determined by law if the pleadings were broad enough. But that question in respect to allowing the amendment was a matter wholly within the sound discretion of the honorable trial court, and we cannot see wherein plaintiff in error was materially injured thereby, or that the court arbitrarily abused his power and discretion.

Plaintiff in error certainly had notice of the issues involved by the original petition, it being a suit for damages for destroying certain property, improvements, and buildings attached to the soil, etc. Pac. Exp. Co. v. Lasker Real Estate Ass'n, 81 Tex. 83, 16 S. W. 792.

[6, 7] Plaintiff in error claims that the court erred in permitting V. C. Crixell to testify, as follows:

"As to whether there was any special reason that caused me to observe the condition of the attachment of those wires to that house that night I was there before the fire, my uncle told me that he had told Mr. Ramsey to remove those wires from there."

In respect to the fourth proposition, the objection was made to the testimony of V. C. Crixell after the evidence had already gone to the jury, and no request was made by the plaintiff in error that the court charge the jury to disregard any portion of the testimony. The general exception so made after the testimony had been given was not sufficient, besides the same testimony was drawn out by plaintiff in error from the witness upon cross-examination.

[8] The testimony upon which there was no controversy showed that Mr. Ramsey had been requested to remove the wires, so all this testimony was harmless. Forrest et al. v. Hull (Tex. Civ. App.) 267 S. W. 308.

[9, 10] Complaint is made that the court erred in permitting Clyde Burke, a qualified electrician, to testify in regard to the fire, as follows:

"If any of those wires got together it would have caused an arc, if they had been strong

275 S.W.—28

enough, 110 volts, to set the wood on fire. Of course if the wires were close enough to the arc, it is bound to set the house on fire, or the wood, whatever it was."

The testimony of all experts who answer hypothetical questions propounded to them is generally but opinion testimony, which the jury may or not believe, but it is admissible. Scalf v. Collins County, 80 Tex. 514, 16 S. W. 314. An examination of the record shows that every fact placed in the hypothetical questions propounded was already in evidence before the jury, and it was proper for the jury to have the testimony of an expert witness to assist them in determining whether electricity would have caused the fire. This is the reason why expert or hearsay testimony is admissible; it clarifies the issue for the jury's determination.

In his proposition plaintiff in error complains because, the defendant in error pleading that defendant's electric wires ran dangerously near to and were attached to plaintiff's house, and defendant's refusal to remove the same when requested, plaintiff's proof should have been confined to these alleged acts of negligence, and plaintiff not having pleaded, as an act of negligence on the part of the defendant, that defendant's transformer was defective or leaky, it was reversible error for the trial court to admit proof on the part of the plaintiff that defendant was negligent in using a leaky or defective transformer, as a ground of recovery.

Under this proposition plaintiff in error attempts to make a statement of the allegations in the petition, and thereupon contends that it nowhere pleaded, as a ground of negligence, that any leaky transformer used in any place by the city or the existence of any tranformer through which electricity passed to the wires conveying electricity to defendant in error's residence caused the damage. There was much testimony in respect to the defective transformer that stood near defendant in error's house at the time of the fire.

[11, 12] It was not error on the part of the court to refuse to instruct the jury not to consider the testimony of the witness Rafael Salazar, to the effect that in his expert opinion, based upon the statement made to him by the city manager, Ramsey, the transformer that stood near the house at the time of the fire was dangerous. Nor was it error on the part of the court to refuse to give plaintiff in error's special issue No. 1, in lieu of the court's special issue No. 2, which special issue No. 1, was:

"Was the fire, inquired about in the first question, communicated to plaintiff's house and furniture as a result of the negligence on the part of the defendant city in constructing and maintaining, dangerously near or attached to plaintiff's residence, a service wire from one place, to wit, the pole in the alley, to another place, to wit, the baby home?"

[13, 14] These objections and propositions are included together. The question concerning the transformer evidently was brought out by plaintiff in error seeking to establish the defense against the possibility that the fire originated from the electric wiring, so that it became relevant and proper for the defendant in error to meet the issue by proving the transformer was defective, and hence did not act as a safety; and hence such testimony was relevant for the purpose indicated. Plaintiff in error cannot, therefore, complain because it was introduced in the case; besides, it was relevant anyway under the pleadings. Defendant in error can only be confined to such special acts of negligence as pleaded, of course; but in this case no such specific and special acts of negligence were pleaded whereby defendant in error was limited, but the acts pleaded as the cause of injury were broadly and sufficiently pleaded so as to show that the fire was partly caused by reason of a defective transformer, or any other defect that caused the fire on account of the defect in wiring or other thing connected with it. Salazar was an employee, working under the direction and control of Ramsey, the foreman of plaintiff in error, whose duty it was to see to it that there were no defective parts in the city's electrical equipment in use, as well as to control those working under him, as was Salazar, so that the foreman's acts in the discharge of his duty, and his declarations tending to show what caused the fire, were admissible in evidence, were cogent, and have a binding effect upon the city. City of Austin v. Nuchols, 42 Tex. Civ. App. 5, 94 S. W. 336; City of Austin v. Forbis, 99 Tex. 234, 89 S. W. 405; 7 R. C. L. 658.

Plaintiff's fifth proposition is overruled, for the reason that the hypothetical questions propounded to the expert witnesses were limited to facts in issue by the evidence. For the same reason, we overrule plaintiff's sixth and seventh propositions.

[15] In regard to the requested charge No. 1, requested by plaintiff and refused by the court, complained of in proposition No. 8, it was properly refused. In part, it referred to law wholly inapplicable to the facts of this case, and the balance of the charge applicable was fully covered by charges actually given, and the court did not err in the refusal. Rosenthal, Meyer & Co. v. Middlebrook, 63 Tex. 333.

[16] The definition of negligence, as set out in the refused charge No. 1, was adequately given and covered by the definition of negligence given by the court on the subject. Section No. W of the refused charge would have permitted the jury to believe that there was an issue involved in the case as to whether the negligence of the city was the proximate cause of the fire, or whether there was some intervening cause which was the proximate cause of the injury, when such an issue had not been raised nor any testimony adduced concerning an intervening cause. It was misleading and wholly inappropriate under the evidence. The charge of the court sufficiently covered proximate cause, and under the evidence there was nothing introduced showing an intervening cause.

[17] The part of plaintiff's charge defining the measure of damages in cases of injury to real estate and personal property, respectively, was wholly unnecessary and inapplicable in the case, because it was submitted on special issues which required the jury to find the reasonable market value of the realty immediately before and immediately after the injury, leaving the damages to be assessed by the court by applying the proper measure to the amounts as found by the jury. The jury was not concerned with the question of the measure of damages. Pac. Express v. Lasker Real Estate Ass'n, supra.

[18] The further question under section V of charge No. 1, was properly refused as stating an erroneous fact that the petition alleged that the city was negligent in constructing service wires leading from the post in the alley of block ———— to what is known and designated in the evidence as the "baby house," because there is no such allegation. In the charge actually given by the court, the jury is asked whether the fire was caused as a result of the negligence on the part of the city "as charged in the petition." The charge requested would have limited the negligence to a specific post not mentioned in the petition, and was clearly erroneous.

The requested charge No. 2, of section 5, was to promulgate the issue of an intervening cause in the record, when no such issue was involved. The issue involved that required a finding of the jury was whether the loss occurred as result of the alleged negligence under the evidence in the case.

[19] Question No. 4 of plaintiff's charge did not include the values of the improvements on said real estate which were required to be found to assess the correct measure of damages, which had been correctly presented in the court's charge No. 3 to the jury.

Question No. 5, requested by plaintiff, referred to the value of the personal property, which was covered by question No. 6 of the court's charge.

[20] Special charge No. 2 of plaintiff, that the testimony of witness Salazar as to what Sarola told him has already been discussed and could not be considered as any evidence of negligence of the city authorizing a recovery. It is partly copied from the court's charge No. 1 given by the court, but the court merely added:

"But you may consider said evidence for the purpose of effecting the credibility of the witness Sarola, if you believe it has that effect."

The requested charge of the plaintiff in error was thus fully covered by the special charge actually given, and no complaint is made, and none could be made, that the addition thereto allowing the jury to consider the testimony for impeaching purposes was error. Therefore, the assignment was and is without merit.

[21, 22] The most difficult and serious question for this court to settle arises in respect to, and grows out of, the alleged misconduct of the jury. The question is presented in plaintiff's seventh proposition, based upon the sixteenth assignment of error contained in plaintiff's motion for a new trial, as follows:

"A statement or communication made by some jurors to four other jurors that, under the law of the state of Texas, an agreement of two-thirds of the majority of the jury constitutes the jury's verdict, is an improper statement or communication, and where the evidence shows that such statement or communication improperly influenced said four jurors and their verdict or answer, such statement or communication constituted improper conduct of the jury, and it is an abuse of the trial court's sound discretion, by reason thereof, in overruling the injured party's motion for new trial based thereon."

Plaintiff makes this statement under the proposition, which the testimony tends to support:

"After the jury had retired to consider their verdict the vote was taken by the jury on the answer to question No. 1, and it was found that 4 of said jurors voted to answer said question in the negative, while 8 stood for an affirmative answer to said question; that then certain members of the jury, voting in the affirmative, stated to the 4 who voted in the negative, that a majority verdict controlled in civil cases; that said 4 jurors believed said communication or statement to the effect that two-thirds majority of the jury controlled the verdict of the jury; that said 4 jurors did not believe from the evidence that plaintiff in error's wire set fire to the house of defendant in error, but came into court on the supposition that said 4 jurors were bound by the action of said two-thirds majority; that but for the communication or statement made by said jurors to the effect that said two-thirds of the jury could render a verdict in civil cases, said 4 jurors never would have come into court and been present while the foreman presented the verdict, because said 4 jurors did not believe then, and do not believe now, that plaintiff in error's electric wire caused the damage to defendant in error's property; that said 4 jurors, when they came in with the other 8, and said verdict was returned, never answered that it was their verdict, and made no objection to the verdict, because they believed the statement and communication made by said other jurors that a two-thirds majority verdict was the rule; that said communication or statement made by said jurors aforesaid to said 4 jurors that a two-thirds majority of the jury could lawfully render a verdict in a civil case was gross misconduct and misled said 4 jurors, and that said verdict only represented the verdict of 8 jurors who tried this case."

Defendant in error meets plaintiff in error's statement with the following:

"The jurors were summoned and placed on the witness stand and questioned by counsel from both sides, as well as by the trial court himself. With three exceptions, each juror questioned stated that the two-thirds agreement now complained of by the plaintiff in error in your honorable court, was not an agreement to be finally bound by a two-thirds majority vote, but that the agreement was merely a preliminary matter to find out how near the jury stood on the various issues, and that the issues were to be passed temporarily by the two-thirds vote and placed on a separate sheet of paper, and then, after all the issues were disposed of in this matter, temporarily, every juror had the right to vote as to whether or not these answers should constitute the final verdict of the jury to be handed in to court. No one was bound by the agreement to render a final verdict on a two-thirds vote, and every juror agreed on the final vote as to the verdict rendered, and no juror opposed the verdict when asked in open court if that was the verdict of the jury, but either by nodding the head or by silence let it be known that it was their verdict.

"Of the three exceptions above mentioned, one Frank Enns voted in favor of the verdict all the way through, and so could not have been affected by the agreement one way or the other, and Walter Holm, another exception referred to, testified that he agreed to the verdict as handed in, and nodded his head in response to the court's question to the jury if that was their verdict. So the only testimony that bears out the contention of the plaintiff in error, as to the misconduct of the jury is alone that of Holm, which stands controverted by every other juror who testified, except Enns and Steward, the former of whom could not have been affected by any agreement because he voted in favor of the verdict as rendered all the way through."

Jurors are given a very broad latitude in the method they adopt in reaching their verdict. They say things that seem improper preliminarily to a final verdict. One, or maybe several of the jurymen here said they agreed to some preliminary matter such as "it would take two-thirds majority to get these questions in form * * * so as to vote on the whole."

[23] It is apparent the jury was striving honestly for a fair basis to compose their differences. There were 12 men with divergent views to be reconciled with each other before a final ballot could be had, and when that point was reached the jury was unanimous in the verdict. We do not see that they were actuated by any other purpose than to reach a unanimous and honest verdict. Chief Justice Fly, writing the unanimous opinion of this court, in Kalteyer et al. v. Mitchell (Tex. Civ. App.) 110 S. W. 462, held:

"We do not think that any such misconduct was shown upon the part of the jury as would

invalidate their verdict, * * * and we cannot hold that the court was not justifiable in ruling that the testimony showed no improper conduct upon the part of the jury. * * * The statute * * * which permits the dangerous practice of impeaching and destroying a verdict of a jury by testimony of members of the jury has a saving clause, which places the granting of a new trial on the ground of misconduct of the jury in the discretion of the trial court, and this court will never interfere with the exercise of such discretion unless there appears a gross abuse of the same. We fail to see any abuse of the discretion granted to the trial judge, and will sustain his action in upholding the verdict."

We wish to affirm and reaffirm the admirable rule laid down by this court speaking through its Chief Justice. In the solution of controversies concerning the alleged misconduct of jurors, so difficult to solve, we would wander in the labyrinth of untold difficulties, but for the application of so plain a rule as stated, supra. We have but little difficulty in settling the matter. The responsibility rests largely upon courageous and honest trial courts in the determination of motions for new trial, and they should never shirk that duty and place it upon appellate courts. They control their juries, and when, if ever, they are guilty of misconduct, they have the power of not only setting aside the verdict but imposing fines upon the jury as well. So, as stated, it requires a very strong case of misconduct on the part of the jury for us to turn down the ruling of the trial court who has had the jury before him and investigated them.

This case contains a very large record and lengthy briefs of both parties, yet so forcefully and ably have they done their work and presented their views that it has maintained for us its interest unabated throughout.

We find no reversible error assigned, and the judgment of the trial court is affirmed.